1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>   vs.<br><br><br>TONY HELMS,<br><br>                 Defendant. | CASE NO. 08 CV 151 JLS (NLS)<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT; (2) GRANTING THE UNITED STATES' MOTION TO STRIKE**<br><br>(Doc. No. 35, 48.) |

12
13
14
15
16
17
18
19
20
21

Presently before the Court is the United States' motion for summary judgment to reduce federal tax assessments to judgment against Defendant Tony J. Helms ("Defendant"). (Doc. No. 35.) The United States has also filed a separate motion to strike certain exhibits filed in support of Defendants' response in opposition. (Doc. No. 48.) For the reasons stated below, the Court **GRANTS** the United States' motion to strike and **GRANTS IN PART** and **DENIES IN PART** the United States' motion for summary judgment.

## BACKGROUND

### I.    Factual Background

22
23
24
25
26
27
28

This action was commenced by the United States to reduce federal tax assessment to judgment for the tax years 1989, 1990, 1991, 1992 and 1993 against Defendant. (*See* Doc. No. 1.) Defendant is a professional tax return preparer and owns his own tax preparation business called Beach Cities Financial Group ("Beach Cities"). However, Defendant did not timely file his own tax returns for these five years at issue, despite demands by the Internal Revenue Service ("IRS")

to do so.  As a result, the IRS made assessments for those tax years and generated Substitutes for Return ("SFRs") based upon third-party sources, including bank deposit analysis.  Finally, in late 2008, through his attorney, Defendant submitted income tax returns for the tax years at issue.  Pursuant to this litigation, IRS Revenue Agent Simon Bonilla conducted an administrative audit and produced an extensive report making line-by-line adjustments to income, deductions and credits for the tax years at issue.  After additional evidence was sent to Revenue Agent Bonilla by Defendant, Revenue Agent revised his report and submitted a final report.

During his examination, Revenue Agent Bonilla first determined Defendant's income by analysis of deposits into Defendant's bank accounts.  The IRS's calculation of income for all five years differed from Defendant's claimed income by an increase of $378,914.42.  Then, the IRS examined various deductions claimed by Defendant for all five years, allowing some deductions and disallowing others based on whether the IRS found they were properly substantiated.  Finally, the IRS made adjustments as a result of the changes in deductions as well as various penalties for failing to file a tax return and failure to pay tax penalties.  The final liability as calculated by Revenue Agent Bonilla for all five years at issue is $1,370,285.00, including penalties, fees, and accrued interest calculated through April 3, 2010, minus any payments.

**II.    Procedural Background**

The United States initiated this action by filing a complaint in this Court on January 24, 2008.  (Doc. No. 1.)  Defendant filed an answer to the complaint on May 14, 2008.  (Doc. No. 4.)  On November 24, 2008, this Court granted a joint motion to stay the proceedings pending the administrative audit discussed above.  (*See* Doc. Nos. 18, 20.)   On May 5, 2010, the United States filed the present motion for summary judgment.  (Doc. No. 35.)  Defendant filed his response in opposition on May 27, 2010.  (Doc. No. 41.)  The United States filed both a motion to strike documents filed in support of Defendant's opposition and its reply to Defendant's opposition on June 11, 2010.  (Doc. Nos. 48, 49.)  Defendant filed a response to the motion to strike on June 28, 2010, and the United States filed its reply on July 5, 2010.  (Doc. Nos. 51, 53.)  Oral argument on both the motion for summary judgment and the motion to strike was held before this Court on July 22, 2010 and was thereafter taken under submission.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

**I.     Motion to Strike**

As a threshold matter, the United States seeks to strike certain documents submitted by Defendant in opposition because they were not disclosed during discovery or were altered from the document that was originally produced. (*See* Mot. to Strike at 4-5.) Specifically, the United States argues that Defendant has failed to timely supplement his responses to the United States' requests

for production and failed to timely comply with the magistrate judge's order ending discovery by December 2, 2009.  *See* Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 37; Doc. No. 29.

Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The burden of establishing that failure to produce the documents is substantially justified or harmless is on the party seeking to introduce such documents.  *See Yeti v by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Defendant admits that the documents at issue in the motion to strike were not previously produced to the United States and that two others were altered from their produced state.  (*See* Helms Decl. ISO Opp. at ¶¶ 2, 3, 4, 7, 8; *see also* Opp. to Mot. to Strike at 2-6.)  However, he fails to explain why these violations are harmless or substantially justified.  Defendant argues that they were produced to clarify or for "historical purposes" and do not produce any new data.  (Opp. to Mot. to Strike at 2.) The Court disagrees.  Defendant seeks to exclude several documents in an attempt to bolster his opposition and create a genuine issue of material fact without giving the United States an ability to inquire into these documents.  For example, Defendant produced "Mileage Reconstruction" summaries for 1990, 1991, and 1993, which attempt to reconstruct the mileage and costs and illustrate a "variance with the amount claimed."  Further, Defendants have altered documents produced without adequately justifying such an alteration.  (*See, e.g.*, Opp to Mot. to Strike at 5.)

Moreover, the burden is on Defendant to substantiate all claimed deductions and Defendant has had ample opportunity to create charts or other documents purportedly aiding the reviewer in evaluating the claimed substantiation.  Defendant now claims that the documents at issue here are doing just that—aiding and assisting the reviewer by summarizing and connecting claimed deductions and substantiation of those deductions.  However, that opportunity arose during discovery and Defendant was given ample opportunity to produce all documents substantiating his claims.  He did not do that and Defendant should not now be able to produce new or altered documents in an effort to defeat summary judgment when those documents could not have been relied on by the United States in the opening motion for summary judgment.  Therefore, the Court

1    **GRANTS** the United States' motion to strike the documents at issue.[1]

2    **II.**       **Actions to Collect Taxes and Burdens of Proof**

3        In an action to collect taxes, the United States has the initial burden of proof which can be

4 satisfied by introducing proof of tax assessments. *See Palmer v. Internal Revenue Serv.*, 116 F.3d

5 1309, 1312 (9th Cir. 1997). The tax assessments and deficiency determinations are "entitled to a

6 presumption of correctness so long as they are supported by a minimal factual foundation." *Id.*

7 The burden then shifts to the taxpayer to show that the assessment is incorrect. *Id.*; *see also*

8 *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983); *Rapp v. Commissioner*, 774 F.2d

9 932, 935 (9th Cir. 1985). The presumption is rebutted by establishing by a preponderance of the

10 evidence that the deficiency determination is arbitrary or erroneous. *See Rapp*, 774 F.2d at 935.

11        In this action, the United States has submitted Certificate of Assessments and Payments for

12 the income tax assessments against the Defendant for the tax years ending December 31 of the

13 years 1989, 1990, 1991, 1992 and 1993. (*See* Fuchs Decl. Exs. 1-5.) Such Certificates of

14 Assessment and Payments establish the United States' initial burden of proof and are afforded the

15 presumption of correctness. *See Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir. 1993); *see also*

16 *Hughes v. United States*, 953 F.3d 531, 535 (9th Cir. 1992); *Huff v. United States*, 10 F.3d 1440,

17 1445-46 (9th Cir. 1993). Furthermore, in addition to these Certificates of Assessments and

18 Payments, the United States has performed an administrative audit and submitted a detailed

19 examination report reviewing all years at issue and explaining its assessments of Defendants'

20 liabilities. (*See* Bonilla Decl. ¶ 385; *see also* Bonilla Decl. Exs. 6-10.) Defendant does not dispute

21 that the United States has met its initial burden. Accordingly, the burden is now on Defendant to

22 rebut the presumption of correctness and establish by countervailing proof that these assessments

23 are in error. In an effort to create said genuine issue of material fact, Defendant submits a 6-page

24 memorandum in opposition to the motion for summary judgment and an 86-page declaration by

25 Defendant explaining over 1200 pages of exhibits filed in support of his opposition, as well as

26

27 ────────────────

28       [1] Notably, as discussed more below, even if these documents were not stricken, the outcome of the motion for summary judgment would remain the same.

1    various other documents.[2]  (Doc. Nos. 39-46.)

2    **III.    Proof of Income**

3           The Internal Revenue Code defines gross income as "all income from whatever source

4    derived," including "income derived from business."  26 U.S.C. § 61(a)(2).  Every individual

5    liable for tax must keep records, statements and returns to establish gross income.  *See* 26 U.S.C. §

6    6001; *see also DiLeo v. Commissioner.*, 96 T.C. 858, 867 (1991), *aff'd*, 959 F.2d 16 (2d Cir.

7    1992).  "If no method of accounting has been regularly used by the taxpayer, or if the method used

8    does not clearly reflect income, the computation of taxable income shall be made under such

9    method as, in the opinion of the Secretary, does clearly reflect income."  26 U.S.C. § 446(b); *see*

10   *also Holland v. United States*, 348 U.S. 121 (1954); *Palmer v. Internal Revenue Serv.*, 116 F.3d

11   1309, 1312 (9th Cir. 1997).  "The use of bank deposits and cash expenditures has long been an

12   acceptable method of computing income." *Mahigel v. Commissioner*, T.C. Memo. 1983-529

13   (1983) (citations omitted).  The burden falls on the taxpayer to prove that the IRS's method of

14   computation is incorrect.  *Id.*  (citations omitted); *see also Parks v. Commissioner*, 94 T.C. 654,

15   661 (1990).

16          In this case, the IRS performed a deposit analysis of Defendant's bank accounts.  The IRS

17   identified the likely source of income for all deposits as his financial services business as well as

18   the occasional sale of real property.  Revenue Agent Bonilla reviewed the returns as well as

19   Defendant's general ledger of Profit and Loss Statements and other documents provided by him to

20   substantiate his claims.  (Bonilla Decl. ¶ 14.)  When such records or deposition testimony from

21   this action corroborated Defendant's characterization of certain deposits as a loan or other non-

22

23          [2]  Notably, the memorandum filed in opposition makes no effort to cite the record or
24   specifically address the pieces of evidence it submits defeats summary judgment. "The district court
     need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence
     is not set forth in the opposing papers with adequate references so that it could be conveniently
25   found." *Carmen v. San Francisco Unified Sch.* Dist., 237 F.3d 1026, 1030-31 (9th Cir. 2001).  This
     is unfair not only to the court, but to the moving party as well.  *Id.; see also Forsberg v. Pacific N.W.*
26   *Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988) ("The district judge is not required to comb the
     record to find some reason to deny a motion for summary judgment").  That said, "the court has
27   discretion in appropriate circumstances to consider other materials" that are not specifically referred
     to in the motion papers. *Carmen*, 237 F.3d at 1030-31.  Moreover, the declaration filed by Helms in
28   support of his opposition does attempt to organize and address the material submitted in an effort to
     create a genuine issue of material fact and defeat summary judgment.

income deposit, Revenue Agent Bonilla did not include these as income.  (*Id.* ¶ 13.)  As a result, the IRS adjusted Defendant's claimed income for each year, with a total difference for all five years of $378,914.42.[3]  (*See* Pl. SOF ¶ 24 (chart summarizing all five years adjustments and total difference).)

Defendant does not challenge the method used to compute the income, but rather the specific findings as to which deposits were or were not included as income.  In Defendant's declaration, he discusses innumerable deposits included as income which he contends he "did and can offer evidence that it is inappropriate to be claimed as income."  (*See* Helms Decl. ¶ 6.)  Defendants' separate statement of facts also indicate that the amount attributed as income is incorrect.[4]  The Court focuses on two categories of income which Defendant contends are in dispute: purported loans and duplicate deposits.[5]

_____

[3]  Defendant's claimed income for the tax year 1989 was $307,414.00, which the IRS increased to $343,949.13.  The claimed income for 1990 was $208.891, increased to $221,776.91.  The claimed income for 1991 was $228,177.00, increased to $331,597.61.  The claimed income for 1992 was $211,019.00, increased to $401,178.67.  The claimed income for 1993 was $197,309.00, increased to $233.222.10.  (*See* Pl. SOF ¶ 24.)

[4]  For the year 1989, Defendant asserts that the audit report overstated income by $41,777, consisting of $6,277 in double-deposits and the erroneous inclusion of loans that are not taxable income.  (Def. SOF ¶ 1.)  The total income would therefore be $302,172.13.  For the year 1990, Defendant asserts that the IRS overstated the income by $5,482.  (*Id.* ¶ 2.)  This would still be $7,403 more than the claimed income—a total of $216,293.  For the year 1991, Defendant contends that the auditor erroneously attributed $60,100 of the additional $103,421 as income.  (*Id.* ¶ 3.)  If true, this would establish an income in 1991 of $271,497.60 (Defendant had claimed $228,177.00).  Defendant also contends that the IRS miscalculated income in the year 1992.  (*Id.* ¶ 4.)  The IRS increased Defendant's claimed income in 1992 of $211,019 by $190,160 for a total of $401,178.67.  Defendant contends that $165,090 of this additional income is offset by multiple loans and double-deposits and that another $3,140 was improperly included in the gross receipts.  (*Id.*)  Further, Defendant contends that $11,520 was included twice and so the deposits attributed to income were incorrect by an amount of $179,750.  (*Id.*)  Even if true, the claimed income would still increase by $10,409 for a total of $221,428.  Finally, Defendant argues that the IRS included an additional $35,900 to the claimed income for the year 1993.  Defendant concedes the amount of $15,296, but argues that despite this concession an additional $56,632 was erroneously included.  (Helms Decl. ¶ 108.)  Thus, it appears that Defendant argues the appropriate income is $20,732 less than his claimed income for a total of $176,577.  In summary, the total income according to Defendant is: Year 1989—$302,172.13; Year 1990—$216,293; Year 1991—$271,497.60; Year 1992—$221,428; and Year 1993—$176,577.  Notably, Defendant apparently concedes that the actual income was higher in 1990, 1991, and 1992 than his claimed income.

[5]  These are the main two issues discussed throughout Defendant's declaration and the moving papers.  Thus, the Court will address only these two issues in evaluating the evidence submitted.  The Court will not otherwise "examine the entire file for evidence establishing a genuine issue of fact . . ."  *Carmen*, 237 F.3d at 1030.

## A.    Purported Loans

Amounts loaned to Defendant are properly considered non-income.  In this case, the IRS did not include purported loans as income so long as they were properly substantiated by documentation, deposition, or other evidence.  However, the IRS did include as income various purported loans, finding that they were not probably substantiated as loans.  *See Mahigel v. Commissioner*, T.C. Memo. 1983-529.[6]  In his declaration, Defendant specifically addresses a purported loan made to him from his father, Eugene Dinkins, which the IRS attributed as income. (*See* Helms Decl. ¶¶ 66-68.)  Defendant contends that these "installments" approximated "$100,000 to $125,000" and were made once a year.  (*Id.* ¶ 66.)  In support, Defendant submits a declaration from Mr. Dinkins; the declaration, however, only states that the loans were made throughout 1989 through 1993 and that he has "no exact recollection" of the amounts, but that they were "in excess of $100,000 during the course of that time."  (Dinkins Decl. ¶ 1.)  Mr. Dinkins also declares that he has personal knowledge that his former wife and Defendant's mother, Bonnie Dinkins, loaned Defendant money during that same period of time.  (*Id.* ¶ 2.)  Defendant also submits a check made out to him by Mr. Dinkins for $50,000.  (*Id.* ¶ 66, Ex. D at 2210.)

The Court finds that Defendant has not substantiated the loans allegedly given to him by Mr. and Ms. Dinkins and that the IRS correctly included these checks as income.  Both Defendant's and Mr. Dinkin's recollection of the exact amounts given to him, and when, are unsubstantiated by sufficient evidence other than vague and self-serving testimony.  Thus, this

---

[6]  The tax court stated:

Specifically, petitioner explained the unaccounted for deposits as coming from amounts loaned to him by friends, parents', and other relatives. However, petitioner offered no documentation or other substantiation for any of the purported loans. None of these individuals were called as witnesses to testify as to the nature and purpose of the loans. The only proof offered by petitioner was his own testimony which was vague and indefinite. He did not identify any deposit which could be attributed to these loans nor offer any details as to their amounts or dates. When pressed, he simply threw out estimates.

*Mahigel*, T.C. Memo. 1983-529.

1   conclusory declaration and check does not create a genuine issue of material fact as to whether

2   these purported loans should be excluded from income.

3       Defendant also discusses several other alleged loans.  These loans include those made to

4   Peter Ma, Steven Dicken, Terry Davis, "Julie", Wayne and Lila Dean, Walt Jolley, and many

5   others.  (*See* Helms Decl. ¶¶ 9, 10, 53, 63, 105, 110-112, 188, 250-367; *see also* Exs. P, Q.)  It is

6   not readily apparent which of these loans the IRS attributed to income or not.  Furthermore,

7   Defendant has not adequately substantiated that these loans are in fact loans, especially

8   considering that many of the loans appear to be clients of Defendant.  As such, the Court

9   **GRANTS** the United States motion for summary judgment insofar as it pertains to attributing the

10   disputed purported loans as income.

11       **B.     Double Deposits**

12       In his opposition, Defendant contends that the IRS attributed several check deposits as

13   multiple deposits.  In support of this contention, Defendant submits a document allegedly

14   reconciling these double deposits which was not previously disclosed during discovery and is one

15   of the documents at issue in the United States' motion to strike.  (Helms Decl. Ex. A at 2031,

16   2035.)  As stated above, the Court strikes this document.  However, even if the Court were to

17   consider this document, the Court finds that Defendant has not created a genuine issue of material

18   fact as to this issue.  Defendant's "reconciliation" sheet attempts to reconcile various checks with

19   deposit slips to show that they were included twice.  However, for the vast majority of the alleged

20   double deposits, the bank numbers on the deposit slip and the bank numbers on the checks which

21   purportedly were double-counted do not match.  As such, there is simply no indication that these

22   deposits are the same and were thus counted twice.  Just because the deposit amounts and the

23   writer of the check is the same does not create a genuine issue of material fact on this issue.  As

24   such, the Court **GRANTS** summary judgment of this issue in favor of the United States insofar as

25   Defendant seeks to "reconcile" checks and deposits with differing bank/check numbers or with

26

27

28

varying dollar amounts.[7]

However, there are a few instances in which it appears the IRS included a deposit as income and then later included the same individual check as income.  For example, it appears that Revenue Agent Bonilla included check # 422 for $155.00 both as an individual check dated February 13, 1989 as well as part of a deposit made on February 14, 2989.  (*Compare* Bonilla Decl. Ex. 6 at 148 *with id.* at 152; *see also* Helms Decl. Ex. A at 2092-94.)  Similar occurrences are illustrated by Helms' declaration, paragraphs 28 through 35, as well as paragraph 40 through 42.  (*See* Helms Decl. ¶¶ 28-35, 40-42; Ex. A. at 2070-2096, 2109-2117.)  As such, the Court finds a genuine issue of material fact as to whether the checks and deposits referenced in these paragraphs, and these paragraphs alone, were included as income twice in the year 1989.[8]

## IV.    Deductions

The Internal Revenue Code permits various deductions from income.  Such "an income tax deduction is a matter of legislative grace and that the burden of clearly slowing the right to the claimed deduction is on the taxpayer."  *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).  The Internal Revenue Code and its regulations require the taxpayer to keep records, statements and returns "sufficient to show whether or not such person is liable for tax . . ."  26 U.S.C. § 6001; *see also* 26 C.F.R. § 1-6001-1(a) (requiring a taxpayer to "keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information").  As such, "[i]t is the taxpayer's burden to substantiate claimed deductions."

---

[7] Given that the checks received were from different persons and different checking accounts, the same check number with differing check amounts does not create a genuine issue of material fact as to whether the same check from the same person for the same amount was counted twice.

[8] To be overly clear, the Court finds no genuine issue of material fact as to those checks and deposits which do not reference the same check/bank number and the same dollar amount.  Further, the Court finds a genuine issue of material fact as to the year 1989 only.  Defendant's declaration and attached exhibits regarding the remaining years at issue do not rebut the presumption of correctness or otherwise create a genuine issue of material fact as to income in those years, as they are intertwined with the purported real estate business and rental income and interest, various purported loans, and even checks made for services Defendant does not recall ever doing and has no recollection why he received those sums of money.  These alleged inaccuracies are discussed throughout this Order and, as will be apparent throughout, do not create a genuine issue of material fact as to whether these sums were properly attributed to income.

08cv151

1   *Maciel v. Commissioner*, 489 F.3d 1018, 1028 (9th Cir. 2007) (citation omitted).  "If evidence to

2   establish a deduction is lacking, the taxpayer, not the government, suffers the consequence."

3   *Talley Indus. Inc. v. Commissioner*, 116 F.3d 382, 387-88 (9th Cir. 1997).

4       Defendant claims various deductions on his tax returns, including Schedule A Itemized

5   Deductions, Schedule C Deductions for Profit and Loss from Business, Schedule D Capital Gains

6   and Losses, and Schedule E Supplemental Income and Loss, from Real Estate deductions.  The

7   IRS both allowed and disallowed claimed deductions, many of which Defendant disputes.

8       **A.**    **Schedule C Deductions—Profit or Loss from Defendant's Financial Services**

9          **Business**

10      Defendant claims deductions for various business expenses associated with his financial

11  services business.  A taxpayer may deduct from income  "all the ordinary and necessary expenses

12  paid or incurred during the taxable year in carrying on any trade or business."  26 U.S.C. § 162(a).

13  A deductible expense must be a (1) "necessary" and (2) "ordinary" (3) "expense"; (4) "paid or

14  incurred during the taxable year"; (5) for "carrying on any trade or business."  *See Commissioner*

15  *v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345, 352 (1971); *see also Smith v. Commissioner*, 300

16  F.3d 1023, 1029 (9th Cir. 2002).  "The term 'necessary' imposes only the minimal requirement

17  that the expense be appropriate and helpful for the development of the taxpayer's business.  An

18  'ordinary' expense must be related to a transaction of common or frequent occurrence in the type

19  of business involved."  *Smith*, 300 F.3d at 1029 (internal quotations, citations and alterations

20  omitted).  "[T]he taxpayer bears the burden of showing that he or she meets every condition of a

21  tax exemption or deduction."  *Davis v. Commissioner*, 394 F.3d 1294, 1298 n.2 (9th Cir. 2005).

22      **1.**    **Rental Expenses**

23      Defendant claims deductions for both office rental expenses and storage rental expenses.

24  The IRS disallowed all rental expenses claimed by Defendant for rental costs of his office space

25  located on Garnet Avenue known as "Garnet Properties," save $625.00 per month, as well as all

26  costs claimed as storage rental.  There is no lease or formal agreement with the owner of the office

27  space nor is there specific information as to which office space he rented in any given month.

28  Moreover, Defendant testified that on various occasions other tenants would pay him their rent and

1    that he would write a check to the landlord for all of them, but there are no written agreements

2    between himself and other tenants, nor can he offer how much rent he paid on behalf of these

3    tenants or how often this occurred.  (*See* Castaldi Decl., Ex. 2 (Helms Depo.) at 360:24-362:1.)

4    Thus, the IRS disallowed all rental expenses except for $625.00 per month, which the IRS

5    contends was the highest regular payment made that appeared to be associated with rent.  (*See*

6    Bonilla Decl. ¶¶ 27, 97, 157, 228, 322.)

7            Defendant, however, contends that the auditor "arbitrarily" reduced the office rental

8    expenses to this amount and that the expenses were actually $31,088 higher throughout the five

9    years at issue.  (*See* Def. SOF in Opp. ¶ 6; *see also* Helms Decl. ¶¶ 119, 164, 168, 174, 178.)

10   Defendant also disputes the disallowance of the storage rental expenses.  (*See* Helms Decl. ¶¶ 149-

11   163.)  A review of the rent checks does draw some question as to why the IRS allowed rental

12   deductions as it did.  First, in 1989, Defendant claimed $2000.00 as rental expenses as settlement

13   of prior office space prior to moving into the Garnet property.  The IRS disallowed this payment

14   made to ARVCO Realty.  However, Defendant submits a deposit slip evidencing this payment and

15   that its was for "settlement" purposes as well as Defendant's declaration explaining what the

16   payment was for.  (*See* Helms Decl. ¶122; Ex. F at 2284.)  Thus, the Court finds a genuine issue of

17   material fact as to this purported rental expense.  Further, the IRS allowed monthly rental expenses

18   of $625.00 throughout the year 1989.  However, the rental checks submitted for this year range

19   from $219.00 to $504,00 to $2000.00 to $3,154.00.  (*See id.* Ex. F at 2286-2316.)  To be sure,

20   Defendant does not explain this significant variance.  Further, many of these claimed rent checks

21   were made out to Security Pacific for cash or a cashier's check and do not reference Garnet

22   Properties or rental payments.  (*See, e.g.*, *id.* at 2286, 2287, 2302, 2303.)  As such, these specific

23   alleged rent checks are not properly substantiated.  That said, however, the Court finds inadequate

24   support for Revenue Agent Bonilla's determination  that $625.00 was the appropriate amount

25   given that very few of the checks referencing rent or Garnet Properties are in the amount of

26   $625.00; in fact, in 1989, *none* of the purported rent checks are in the amount of $625.00.

27           Further, in 1990, almost all checks referencing Garnet Properties are for $629.  (*See* Helms

28   Decl. Ex. G at 2331.)  The Court does not find support for why Revenue Agent Bonilla disallowed

the extra $4.00. Similarly, in 1991, all checks submitted by Defendants made to or referencing Garnet Properties are either in the amount of $900.00 or $904.00.  (*See* Helms Decl. Ex. H.)  There is no explanation by Defendant for the $4 variation, but no check is made in the amount of $625.00.  As in 1991, the rent checks made out in the year 1992 are also in various amounts, including $900.00, $904.00 and $625.00.  There are also three checks referencing specific suite numbers; two in the amount of  $440.00 for suite numbers 7 and 24 and another in the amount of $625.00 for suite numbers 8 and 12.  (*See* Helms Decl. Ex. I; *see also id.* at 2394, 2395, 2396.) These varying rent payments for the different suite numbers continue throughout 1993.  (*See id.* Ex. J at 2399.)

The Court finds, therefore, a genuine issue of material fact as to the proper amount of rental expenses Defendant is entitled to for all five years at issue.  Though there is no adequate explanation for the varying amounts in the record and Defendant did testify that he occasionally paid rent on behalf of other tenants, the mere existence of these checks which are in large part substantiated as rent checks made to Garnet Properties creates a genuine issue of material fact as to the proper amount attributed as office rental expenses.  Thus, the Court **DENIES** the United States' motion for summary judgment insofar as its applies to its assessment of office rental expense deductions.  This denial includes the IRS's disallowance of the $2000 settlement rent expense to ARVCO realty in 1989.

As for the storage rent expenses, however, the Court finds that Defendant has not properly substantiated that this storage space was for business versus personal use, especially considering the purported storage space was at his personal residence and paid contemporaneously with his personal apartment rent check.  (*See* Helms Decl. ¶ 149, Ex. F at 2315-2327.)  There is simply no evidence that these storage expenses were paid in relation to a business and not for some other, personal, reason.  Thus, the Court **GRANTS** summary judgment in favor of Defendants' disallowance of all claimed storage rental expenses.

### 2.    Automobile Expenses

Defendant also deducts the use of his vehicles as ordinary and necessary business expenses.  Defendant owns two vehicles, an El Camino and a Ford van.  Helms testified:

1       I used the car to run errands, to pick up paper and supplies, to work on real-estate
2   properties, to meet with tenants for meetings for entertainment, for any activities.  And I
    used it to pick up my laundry, which was across—actually, the laundry was next door; to
    go to the grocery store, which was a quarter a mile away; to drive to the office, if I drove to
3   the office when I moved a quarter of a mile away.

4   (*See Castaldi Decl.*, ¶ 2, Ex. 1 (Helms Depo.) at 317:3-10.  He further stated: "The van was used

5   for the same purposes as my El Camino."  (*Id.* at 317:25-318:1).

6       The IRS disallowed all automobile expenses because there was no clear record adequately

7   distinguishing what portion of the vehicles' use was for business versus personal use.  The Court

8   agrees.  26 U.S.C. § 274(d) and 26 C.F.R. 1.274-5T require a taxpayer to substantiate his or her

9   travel expenses.  Records must be kept which contain the amount of expenses, the dates of

10  departure and return, the destination, and the business purpose.  *See* 26 C.F.R. § 1.274-5T(b)(2)(i)-

11  (iv) & (c).  Furthermore, "[i]t has been consistently held that a taxpayer's 'commuting' expenses

12  from his residence to his place of employment are not deductible."  *Crowther v. Commissioner*,

13  269 F.2d 292, 298 (9th Cir. 1959) (citing *Commissioner v. Flowers*, 326 U.S. 465 (1946) (other

14  citations omitted)).

15      Defendant contends that he has sufficient documentation to deduct automobile

16  expenses in the total amount of $21,482 for all five years.  (*See* Def. SOF in Opp. ¶ 7.)  In his

17  declaration, Defendant points to various receipts and documents which are intended to

18  support his claimed vehicle mileage.  However, these documents do not solve the issue of

19  distinguishing between personal and business use, as the documents make no reference to

20  where he was going or for what purpose.  Instead, Defendant estimates what portions of his

21  vehicle use were for business or personal use, allowing certain mileage as personal use. (*See*

22  Helms. Decl. ¶ 189 (allowing 1,200 miles for personal use, leaving 7,280 business miles for

23  year 1989); ¶ 214 ("My commute was still one-quarter of a mile to work.  I subtracted over

24  1,000 miles as a reasonable allowance for personal miles"); ¶ 228 ("In 1992, I allowed

25  almost 3,000 for personal use of my two vehicles, even though my commute had not changed

26  and was still one-quarter of a mile from home to work."); ¶¶ 239-241 (allowing personal

27  deductions for commute using 200 workdays, though "a more normal and reasonable

28  allocation would have been 100 to 150 workdays," and subtracting 7,200 miles for

1   commuting).

2          The Court finds such an unsupported and undocumented estimation insufficient.  The

3   Treasury Regulations clearly require a more detailed record of business purpose, dates,

4   destinations, and expenses other than what has been provided by Defendant.  *See* 26 C.F.R. §

5   1.274-5T(b)-(d).  His mere testimony that he used his vehicle in the ordinary and necessary

6   course of business, even more specifically to pick up supplies, meet or entertain tenants, or

7   other activities, is not sufficient.  Similarly, estimations of personal versus business use, even

8   if over-estimated, are not sufficient without adequate substantiation.  Moreover, while

9   Defendant admits to using the vehicles for personal use, he seeks to deduct all expenses such

10  as repairs, insurance and registration without prorating those expenses based on his

11  percentage of business use.  *See Sylvester v. Commissioner*, 923 F.2d 863, 866 (9th Cir.

12  1991) (Table).

13         Defendant also admits that he has no mileage records for the 1990, 1991 and 1993 tax

14  years because his car was stolen and such documents were allegedly lost.  Instead, he uses

15  reconstruction of mileage charts not provided during discovery and subject to the United

16  States' motion to strike.  Thus, because the Court grants the United States' motion to strike

17  these documents, there is insufficient evidence to defeat summary judgment as it pertains to

18  mileage expenses for 1990, 1991, and 1993.[9]  However, even without striking the documents,

19  the Court finds no genuine issue of material fact that the United States properly disallowed

20  these deductions given that Defendant has not sufficiently established business versus

21  personal use.  Thus, the Court **GRANTS** the United States' motion for summary judgment to

22  the extent it pertains to the disallowance of all expenses associated with Defendants'

23  automobiles and their use.

24  //

25

26         [9]  To reiterate, these reconstructions specifically state that they were created in 2010 and "at
    variance with the amount claimed."  (*See* Helms Decl. Ex. L at 2450; Ex. M at 2461; Ex. O at 2476.)
27  Defendant concedes that they were never produced to the United States but are merely an "attempt
    to refine and to assist in reconstructing the significance of the data following it."  (*See* Opp. to Mot.
28  to Strike at 4.)  The Court finds this improper and that such reconstruction documents should be
    stricken.

### 3. Interest

The IRS also disallowed all claims of interest paid on Defendant's purported business loans. Defendant testified that he understood deductions are not allowed for interest paid on personal loans, but that he relied on his memory to determine whether the loans were for business or were personal. (*See* Castaldi Decl. Ex. 2 (Helms Depo.) at 159:4-11.) Thus, because Defendant could not substantiate which loans were for business purposes, the IRS disallowed all interest deductions. The Court agrees with this assessment.

In his declaration, Defendant first summarizes purported loans from 30 individuals, as discussed above. This is exhibit P, which is addressed in the United States' motion to strike. Then, Defendant presents allegedly "allowable documentation" supporting claimed interest deductions on several of these loans. In summary, Defendant concludes:

> [I]n 1989, I failed by oversight to claim $15,318.78 of interest expense for which documentation exists. In 1990, I claimed $16,481 and documentation supports $21,431. Both of these amounts are great [sic] than the amounts claimed for those years. In 1991, allowable documentation supports $7,755.66. I claimed $12,000. In 1992, I claimed $2,433; allowable documentation supports $1,730.79. In 1993, I claimed $16,000 and allowable documentation supports $7,187.36. The total from allowable documentation is $53,424.25. The amount claimed for the five-year period is $47,637, approximately $6,000 less.

(Helms Decl. ¶ 380.)

To the extent the Court found above that the IRS properly included these purported loans as income because they are improperly or inadequately substantiated, Defendant is not permitted to deduct interest payments on these loans. Moreover, the documentation provided by Defendant to support the interest payments on these alleged business loans do not adequately substantiate that they are indeed business, not personal, loans. Defendant himself admitted that he did not keep track of which were personal and business, but instead relied on his memory. A declaration attesting that these loans were business loans is not sufficient to defeat the presumption of correctness or summary judgment.[10] Accordingly, the Court finds no material disputed fact as to whether these claimed interest payments were properly disallowed and **GRANTS** the United States' motion for summary judgment as to these

---

[10] This is true even if the loan was considered non-income, because personal versus business loans are not relevant for purposes of income, but is relevant for purposes of interest deduction.

interest deductions.

### 4.  Employment Taxes

Revenue Agent Bonilla allowed deductions for 1991 and 1992 payments of employee taxes, but disallowed claimed payments for delinquent employment taxes in the other years at issue.  Revenue Agent Bonilla found that these employment taxes were improperly substantiated by documentation supporting an accurate calculation of payments including the deduction of penalties incurred by Defendant's untimeliness to file said payroll taxes.  While employment taxes may be deducted, penalties such as those associated with delinquent tax payments are not.  *See* 26 U.S.C. § 162(f); *see also Medeiros v. Commissioner*, 77 T.C. 1255, 1261 (1981).  Accordingly, the United States argues that without substantiation that these payments did not include any penalties assessed, the Defendant is not entitled to full deduction.[11]  Defendant disputes only a payment disallowed in the 1990 tax year.

Specifically, the United States contends that Defendant deducted taxes pursuant to a Notice of Federal Tax Lien encumbering a condominium owned by Defendant.  (*See* Castaldi Decl. ¶ 17, Ex. 14; ¶ 2; Ex. 2 at 295:4.)  The title company, Chicago Title, through its attorney Levinson and Lieberman, Inc., threatened to sue Defendant of these taxes due on the lien. (*Id.* ¶¶ 19, 20, Exs. 16, 17.)  On October 24, 1990, the lien was worth $28,184.28 plus accrued interest.  (*Id.* ¶ 21, Ex. 18.)  On his 1990 tax return, Defendant claimed a deduction for payroll tax arrears in the amount of $28,938.00, referenced as "Gallo Chi Title Lo. . .". (*See* Bonilla Decl. ¶ 99, Ex. 2 at US0077; Ex. 15 at 183-0012.)  The journal entry memos corresponding to these expenses reference the law firm of Levinson & Lieberman and "Gallo" or "Chicago Title – Gallo."  (*See id.*, Ex 19; Ex. 22.)

Defendant specifically disputes the disallowance by the auditor for the claimed deduction of $28,938.00.  (*See* Def. SOF in Opp. ¶ 12; *see also* Helms Decl. Ex. Y.)

---

[11] "Moreover, it appears that the Defendant is attempting to deduct the very same tax payments over a three year period."  (*See* MSJ at 10; *see also* Bonilla Decl. ¶¶ 159, 231.)  In 1990, Defendant claims a payroll tax deduction of $28,938.00.  In 1991, Defendant claims a payroll tax deduction of $15,000 and, in 1992, a payroll deduction of $6,050.  (*See* Bonilla Decl. ¶ 99, Ex. 2 at US0077, ¶ 159, Ex. 3 at US0099; ¶ 231, Ex 4 at US0130.)  Defendant does not discuss or dispute the 1991 and 1992 payments or any alleged double deduction.

Defendant contends that the payment by Chicago Title was a loan which he ultimately repaid and that he apparently used this loan to pay the payroll tax arrears. The Court finds that the declaration and supporting exhibits does not defeat summary judgment. There is simply no authoritative connection between the payroll tax arrears and the Chicago Title "loan." Furthermore, the sums differ by approximately $7,000 which is explained by Defendant as interest. Yet, there is no substantiation as to what portion of the alleged payroll tax arrears was paid of principle versus any penalties. As such, the Court finds that the IRS properly disallowed all employment payroll tax deductions and **GRANTS** summary judgment as to this issue.

### 5.  Travel, Meal and Entertainment Expenses

The IRS disallowed all claimed travel expenses and meal and entertainment expenses, save one meal, because Defendant did not offer contemporaneous records explaining the business purpose of the travel, meals or entertainment.[12] *See* 26 U.S.C. § 274(d) and 26 C.F.R. § 1.274-5T(c)(2) (requiring strict proof, through records adequately and contemporaneously maintained, of the amount of each expense claimed, the time and place of travel, meals, and entertainment, and the business purpose of the travel, meal or entertainment). (*See* Bonilla Decl. ¶¶ 31, 32, 92, 95, 156, 158, 230, 319, 324.) Furthermore, even if the IRS were to credit the amount set forth in Defendant's ledgers for meal and entertainment expenses, they did not equal the amount claimed in the tax returns and also did not include the business purpose of those activities. (*See id.*) Included in the disallowed meal and entertainment expenses are those with the notation "OPM."[13]

In his declaration, Defendant does not explicitly address the claimed travel expenses other than his automobile expenses; therefore, the Court **GRANTS** summary judgment on the issue of disallowing all claimed travel expenses. Defendant does, however, attempt to

---

[12]  Defendant claimed the following:  1989: Travel $308; M/E $3,042.   1990: M/E $1504.  1991: Travel $296; M/E $2,604.  1992: Travel $33; M/E $232.  1993: Travel $24; M/E Claimed $2,102, Allowed $87.00.

[13]  At oral argument, Defendant explained that this notation referred to "On Premise Meals."

1  dispute the disallowed meal and entertainment expenses, as well as those classified as

2  "OPM." (Helms Decl. ¶ 637.)

3     Defendant first asserts:

4     For all five years, exam relied on ledgers provided for support of claimed amounts on
      the returns. It was explained that some of the items noted on the returns were not
5     supported by data on the ledgers, but were supported by additional documentation
      contained in the files. The files contain 32,000 images. When addressing items not
6     contained on the ledger, exam was consistently inconsistent to allow or disallow the
      item.
7
   (*Id.*)[14]
8
9     Treasury Regulation 1.274-5T(c)(2) directly addresses this issue. This section states:

10    [A] taxpayer shall maintain an account book, diary, log, statement of expense, trip
      sheets, or similar record . . . and documentary evidence . . . which, in combination,
11    are sufficient to establish each element of an expenditure or use . . . . It is not
      necessary to record information in an account book, diary, log, . . . or similar record
12    which duplicates information reflected on a receipt so long as the account book, etc.
      and receipt complement each other in an orderly manner.

13  26 C.F.R. § 1.274-5T(c)(2)(i). Accordingly, the ledger is not the only source available to the

14  taxpayer to substantiate his expenses and the IRS should consider the receipts which were

15  not included in the ledger. That said, it is unclear whether the receipts not included in the

16  ledger complemented the ledger "in an orderly manner." Furthermore, these receipts must

17  still contain "a written statement of business purpose." *Id.* § 1.274-5T(c)(2)(ii). However,

18  especially for on-premise meals for employees, "if the business purpose of such meal is

19  evident from the business relationship to the taxpayer of the persons entertained and other

20  surrounding circumstances, a written explanation of such business purpose will not be

21  required." *Id.* § 1.274-5T(c)(2)(ii)(B).

22     A review of the receipts submitted by Defendant as substantiation of his claimed

23  meal and entertainment expenses illustrates a genuine issue of material fact as to whether

24

25  _____

26     [14] Defendant then goes on to provide "samples" from the documents provided to Revenue
    Agent Bonilla in an effort not to "burden the court with approximately 4,000 documents." (*Id.*; *see*
27  *also id.* Ex. GG.) To this, the United States argues that Defendant "fails to recognize that he bears the
    burden of proving that his expenses were ordinary and necessary. Stating that he has record is
    insufficient to place any evidence before the Court and does not create an issue of material fact."
28  (Reply ISO MSJ at 8.) The Court agrees and thus will only consider the "samples" submitted to the
    Court.

certain meals were properly disallowed for the years 1989, 1990 and 1991.[15]  In 1989, there is a receipt for $76.75 from Pacific Beach Company which references various meals for several different people.  Defendant attests that he often purchased meals, snacks, and drinks for his employees on premises and this is one such occasion.  Judging from the number of people and the proximity of Pacific Beach Company to the business office, no further business purpose may be necessary.  Furthermore, there are other several receipts with the notation "OPM", i.e. on premise meals, which also contain a variety of meals and sodas apparently for several different people.  Similarly, in 1990, there are several receipts with the notation "OPM" as well as various receipts indicating the meal was with employees or a prospective employee.  There are also receipts indicating the business purpose of end of season lunch and office party planning.[16]  In 1991, Defendant submits a receipt indicating lunch with two former employees for "tax season plng", as well as various other receipts indicating who the meal was with and for what purpose.  (*See* Ex. GG at 3172-3173, 3176-77.)

Additionally, for the years 1990 and 1991, Defendant produces a log summarizing some of the meal and entertainment expenses of that year, noting the date, dollar amount, place, people in attendance and general business purpose.  (*See* Ex. GG at 3169-3170, 3178-3184.)  There is an issue whether this log was contemporaneous as required by the Internal Revenue Code and its regulations, and Defendant makes no attempt to assert this log was in fact made contemporaneously with the expenditures.  (*See* Helms Decl. ¶ 652 (describing the log as "a work product on which I attempted to begin the calculation of expenses); *see also id.* ¶ 657.)  Thus, the Court will not credit this log or reconciliation document as proper substantiation of Defendants' claimed expenses.

---

[15]  However, as discussed more below, for the years 1992 and 1993, there is no evidence submitted which create a genuine issue of material fact and the very few receipts submitted in the years 1989, 1990 and 1991 do not create a genuine issue as to *all* disallowed expenses.  It is Defendant's burden to submit evidence to create a genuine issue of material fact as to each and every individual claimed deduction and simply offering to later provide documents or evidence or using "samples" to defeat summary judgment as to the whole category of deductions does not meet this burden.

[16]  These receipts are cited by Helms in support of 1989 deductions though they appear to be 1990 expenses.  (*See* Helms Decl. Ex. GG at 3154-3155, 3160; *see also id.* at 3146-47.)

1    For the year 1992, however, Defendant concedes that he has been "unable to locate

2 the expense receipts for on-premise meals" for that year but that various other documents for

3 entertainment meals and expenses were submitted to Revenue Agent Bonilla.  (Helms Decl.

4 ¶ 656.)  He produces no documents for these years in support of his opposition and instead

5 references only "approximately 150 entertainment expenses with various degrees of

6 documentation, supporting statements, names, expense amounts, location, business purpose,

7 etc."  (*Id.*)  This is insufficient to defeat summary judgment.  The same goes for year 1993,

8 which Defendant produces only a receipt indicating that it was for "take out" and a $3.20

9 receipt with no date or indication of where the meal was purchased from.  As in 1992, a mere

10 reference to what was available and given to the IRS is not sufficient to defeat summary

11 judgment.

12    For those reasons, the Court **GRANTS** the United States' motion for summary

13 judgment insofar as it pertains to the disallowance of all meal, entertainment and "OPM

14 expenses in the years 1992 and 1993.  However, the Court **DENIES** the United States'

15 motion for summary judgment for the years 1989, 1990, and 1991, but only insofar as the

16 specific receipts submitted in opposition to Defendants' opposition which explicitly

17 reference "OPM" and specific employees or specific clients, a specific business purpose, or

18 various orders for identified employees which indicate, under the circumstances, a business

19 purpose.[17]  *See* 26 C.F.R. § 1.274-5T(c)(2)(ii).

### 6.    Miscellaneous Expenses

21    Revenue Agent Bonilla also disallowed various deductions for "miscellaneous"

22 expenses because there was no identified business purpose and personal expenses are

23 generally not deductible.  *See* 26 U.S.C. 262(a); *United States v. Gilmore*, 372 U.S. 39, 46

24 (1963).  For example, Revenue Agent Bonilla disallowed a claimed deduction in 1992 for cat

25 vitamins and claimed deductions in 1993 for tennis shoes and a Father's Day card.  (*See*

26 Bonilla Decl. Exs. 22 at 167-2236, 25 at 209-0018-19; *see also id.* Exs. 11 at 212-1467-68,

27 ────────────

28    [17]  To be clear, the Court finds a genuine issue regarding *only* the following receipts found within Ex. GG to Helms Declaration: Pages 3146, 3154-55, 3158-59, 3160, 3161-64, 3165-64, 3172-73, 3176-77.

08cv151

Ex. 15 at 183:0010-11, Ex. 19 at 196-1794-95.)  Further, the United States points to a

disallowed deduction in the year 1991 for personal income tax paid in 1990, given that this

tax was already claimed on the 1990 return.  (*Compare id.* Ex. 19 at 196-1794 *with* Ex. 2 at

US0067, line 58.)  Similarly, the IRS disallowed expenses referred to as "OPM and MSCL"

because they were unsubstantiated and because his OPM and MSCL entries in his expense

journal do not coincide with the claimed deductions.  (*See id.* ¶¶ 95, 96, 158, 162, 234, 329.)

The IRS also disallowed temporary labor expenses, as there was no evidence that Defendant

issued W-2 forms or 1099s to any alleged temporary laborers and there is no contract

evidencing any use of a temporary employee agency.  (*See* Castaldi Decl. ¶ 23, Ex. 20 at

53:5-12; ¶ 2, Ex. 1 at 331:21-332:21.)

In response, Defendant submits various receipts from drug stores, art stores, repair

shops, home improvement supply shops, greeting cards, book stores, and various other

expenses with some not even identifying what was purchased or where the receipt is from.

(*See generally* Helms Decl. Exs. S, T, U, V, W.)  For many of these expenses for the 1990

and 1991 tax years (Exs. S and T), Defendant asserts that he believes that the expense was

incurred for some business purpose or would be deductible someplace regardless, as well as

assertions that he could not remember for what specific purpose the expense was made.

(*See, e.g.*, Helms Decl. ¶¶ 392, 394, 397, 418, 421, 433, 493, 520, 533, 535, 544, 561.)

However, there are also a plethora of receipts from 1990 and 1991 which are detailed and for

which Defendant offers an explanation as to why those expenses were ordinary and

necessary business expenses.  For example, Defendant contends that several repairs were

made to chairs and desks in the office, that magazines were purchased for the office lobby,

that frames were made when he first moved into the office, and various other expenses

incurred which the Court finds may be ordinary and necessary business expenses pursuant to

Defendants' own statements as corroborated by the receipts.  As such, the Court finds that

Defendant has sufficiently established a genuine issue of material fact as to the various

miscellaneous expenses submitted within Exhibits S and T in the years 1990 and 1991,

except for all claimed business gifts, as explained below, and therefore **DENIES** summary

1  judgment accordingly.

2      As to the claimed gifts, Defendant submits receipts for numerous items claimed as

3  business gifts, including hundreds of dollars in alcohol, fruit, and nut packages.  Defendant

4  attests that these were all given to clients and that all efforts were made to make sure these

5  were not personal gifts.  Treasury Regulation 1.274-5T(b)(5), however, requires that all gifts

6  must be substantiated by including the amount, date of the gift, description of the gift, the

7  business purpose for the gift, and the business relationship of the recipient, including the

8  name, title or other designation.  26 C.F.R. § 1.274-5T.  In this case, there is little to no

9  indication as to who the recipient of the gifts were, much less the business purpose,

10  relationship, or description of the gift.  (*See, e.g.*, Helms Decl. ¶ 446 (gift certificate for

11  unidentified staff member); ¶ 451 (wine and cheese assortment with no other information);

12  ¶¶ 452, 454 (receipt from Liquor Barn with no other information); ¶¶ 479-80 (fruit cakes

13  given to unidentified people as "Christmas gifts"); ¶ 494 (model cars); ¶ 557 (wine and

14  cheese baskets to unidentified "clients" and "tenants"); ¶ 559, ¶ 575.)  Because these

15  purported gifts are not properly substantiated, the Court finds the IRS properly disallowed

16  them as a matter of law and **GRANTS** summary judgment insofar as the United States

17  disallowed all claimed business gifts.

18      For the 1992 and 1993 tax years, Defendant provides only a summary "referencing

19  the exam's disallowance and exam's reliance on internal documents provided to exam, the

20  retyping of those documents, and then the actual report showing those items."  (Helms Decl.

21  ¶¶ 565, 571, 576.)  Defendant then provides Revenue Agent Bonilla's final allowance for

22  miscellaneous expenses and Revenue Agent Bonilla's re-typing of the list of claimed

23  expenses and whether he allowed or disallowed each expense.  (*See id.*, Ex. U at 2864-66;

24  Ex. V at 2868-71; Ex. W at 2876.)  For the years 1992 and 1993, Defendant then asserts that

25  the summary disallowance of the majority of these claimed expenses was improper because

26  they were supported by documentation other than the ledger and that these other documents

27  were disregarded by the IRS.  Defendant, however, does not submit to this Court any such

28  supportive documents.  As such, Defendant has not met his burden of submitting evidence

1   sufficient to defeat summary judgment and thus the Court **GRANTS** summary judgment in

2   favor of the United States insofar as it pertains to the disallowance of all miscellaneous

3   expenses for the years 1992 and 1993.

4         For the 1989 tax year, Defendant attempts to address several items which were

5   disallowed by the exam, though conceding other disallowed expenses.  First, Defendant

6   addresses the temporary employee expenses claimed on the 1989 return.  Defendant submits

7   three checks made out to Eastridge Temps.  Defendant claims these were checks made for

8   temporary employees hired during the busy part of the season in late April and May.  (*See*

9   Helms Decl. ¶ 582, Ex. W at 2283-85.)  The IRS disallowed these temporary employee

10  expenses because there was no evidence that Defendant issued W-2 forms or 1099s to any

11  alleged temporary laborers and there is no contract evidencing any use of a temporary

12  employee agency.  As such, the United States contends that there is nothing to connect these

13  temporary employees to his financial business or for any other legitimate business purpose.

14  The Court agrees and **GRANTS** summary judgment of this issue.

15        Defendant also contends that a $50 check to TRW Appraisal Service referencing a

16  client, Hallum, was improperly excluded and that this check was made for an appraisal,

17  which was "necessitated to facilitate the potential sale and listing of her home."  (*Id.* at ¶ 852,

18  Ex. W at 2886.)  Defendant also contends that an expense to Crown Management was

19  excluded in 1989 but previously allowed.  Defendant does not point to this previous

20  allowance.  Finally, Defendant references a notation of $45 paid to the State of Delaware

21  allegedly for information regarding a corporation.  There is no check or other evidence of

22  such payment.  The Court finds that these expenses are not properly substantiated as an

23  ordinary and necessary expenses associated with a profit-motivated business as a matter of

24  law.  Further, Defendant concedes the remaining balance of the 1989 disallowed expenses.

25  (Helms Decl. ¶ 584.)  The Court therefore **GRANTS** summary judgment of the claimed

26  miscellaneous expenses in 1989 in its entirety.

27      **B.**    **Schedule C and Schedule E Deductions—Profit or Loss from Defendant's Real Estate Business and Supplemental Income and Loss**

28        In addition to Schedule C expenses related to Defendant's financial services business,

1   Defendant reports income and business expenses associated with various real estate

2   properties located in Southern California.  Defendant claims to have either ownership or

3   other interest in these properties and that he purportedly made repairs on and then either

4   rented or sold them after they were improved.  The IRS found that Defendant demonstrated

5   an ownership interest in some of the properties and therefore allowed Defendant to claim at

6   least some of the rental income and expense deductions to the extent they were

7   substantiated.[18]  However, the IRS disallowed all income and expenses claimed in the years

8   at issue regarding various other properties.[19]  For the reasons below, the Court **GRANTS** the

9   United States' motion for summary judgment, finding that the IRS properly disallowed all

10   income and expenses claimed on these properties at issue.

11                   **1.**     **Profit-Motive**

12        First, the Court finds that Defendant has not sufficiently established that this

13   purported real estate business is in fact a profit-motivated business so as to permit Defendant

14   to deduct all ordinary and necessary business expenses.  In order to establish a trade or

15   business, a taxpayer must enter into the activity "with the dominant hope and intent of

16   realizing a profit."  *United States v. American Bar Endowment*, 477 U.S. 105, 110 n. 1

17   (1986); *see also Indep. Elec. Supply v. Commissioner*, 781 F.2d 724, 726 (9th Cir. 1986).  No

18   deduction attributable to "an activity [] not engaged in for profit" shall be allowed.  26

19   U.S.C. § 183(a).  The taxpayer bears the burden of proving a profit-motive for entering into

20   the activity.  *See Skeen v. Commissioner*, 864 F.2d 93, 94 (9th Cir. 1989).  Treasury

21   Regulation § 1.183-2 sets forth a non-exclusive list of factors which the Court should

22   normally consider: (1) the manner in which the taxpayer carriers on the activity; (2) the

23

24         [18]  Defendant does not appear to dispute the expenses disallowed involving the properties
which the IRS found he did have an ownership interest in, which included: 1) the Ruffin Road

25   property; 2) the Caminito Aralia property; 3) the Caminito Sulmona property; 4) the Scripps Westview
Way property; 5) the Thunder Drive property; 6) the Vista Campana South property.

26

27         [19]  These properties at issue for which the IRS disallowed all claimed income and deductions
are those known as: 1) the Eureka Street property; 2) the Rancho Mission Road property;
3) the Tower Drive property; 4) the Sonora Avenue property; 5) the Wimberly Square property; 6) the

28   Berlin Street property; 7) the Avenida Navidad property; 8) the Montongo Street property; 9) the Lake
Athabaska property; and 10) the Grand Avenue Property.

1  expertise of taxpayer or his advisors; (3) the time and effort expended by the taxpayer; (4)

2  the expectation that assets used in the business may appreciate in value; (5) the success of the

3  taxpayer in similar or dissimilar activities; (6) the taxpayer's history of the business's income

4  or losses; (7) the amount of profits, if any, earned; (8) the financial status of the taxpayer;

5  and (9) elements of personal pleasure or recreation.  26 C.F.R. 1.183-2(b).

6       The United States' argument for why there is no evidence of a profit-motive is linked

7  to the argument that Defendant has not demonstrated an ownership interest in these

8  properties.  For seven of the properties, the United States claims that Defendant cannot offer

9  any evidence of his relationship to these properties and their owners.  The United States

10  asserts that Defendant has not offered any evidence that he is the record title holder of these

11  properties, no documents outlining any agreement to assume expenses to improve the

12  property with the property owners, no documents from those owners stating they intend to

13  reimburse him or share in profits from the sale of the properties, and no documents

14  demonstrating the existence of profit or scope of any purported authority he had to make

15  improvements on the properties.  (MSJ at 13.)  Further, Defendant has submitted no rental

16  contracts for purported tenants that rented this property.  (*Id.* at 14.)  Moreover, the United

17  States argues that there is no evidence that Defendant had any particular expertise in

18  renovations to real estate.  (*Id.*)  Thus, with no documented interest in the property, there is

19  no evidence that any activities allegedly taken in connection with these properties were

20  motivated by profit.  The Court agrees.

21       For three other properties, Defendant was purportedly given power of attorney by the

22  property owners, though the United States claim that this is insufficient to establish the

23  business or profit motive.  Defendant asserts in his deposition that these power of attorney

24  documents gave him the right to make whatever repairs or improvements to the property, and

25  pay all expenses to do so, then sell the properties and share in the profits.  (*See* Castaldi Decl.

26  Ex. 1 at 245, 257-58, 262-63; *see also* Exs. 31, 33, 37.)  The United States, however, argue

27  that the powers of attorney (which are all identical) do not authorize such a relationship, but

28  instead only grant Defendant the right to collect moneys, convey the properties, encumber

the properties and other rights.  (*See* Exs. 31, 33, 37.)  Accordingly, the United States

contends that though the rights granted to Defendant as an agent of the property owner are

extensive, the powers of attorney do not give Defendant a property interest in the properties,

nor any right to receive or share in profits so as to establish a profit-motive.  (*See id.*)  Again,

the Court agrees.

Furthermore, regardless of lack of documented interest in these properties, Defendant

has not demonstrated that he engaged in these activities or incurred these expenses for profit

based on the objective factors outlined in the Treasury Regulations.  For example, there is no

evidence of adequate business records; Defendant's expertise in real estate business,

especially considering he was a tax preparer and hired people from his tax preparation

business to help with the improvements; written contracts establishing a share in the

appreciation or profits of these properties.  Further, Defendant reported over $110,000 in

losses over five years and testified that he derived substantial personal pleasure from

repairing the homes, as it was "his favorite thing in the world."  Defendant also testified that

for several of the properties, he just wanted to help out the owners.  (*See* MSJ at 15 and

accompanying citations.)

Defendant's argument in opposition is essentially that there is simply no evidence

that Defendant engaged in this activity for any reason *other* than for profit.  Defendant

contends: "It is hard to imagine what other type of motive he could have been entertaining."

(Opp. at 4.)  The argument is without merit.  One can spend money and incur various

expenses related to a hobby or other activity simply enjoyed by the individual without it

being motivated by profit or entered into with the hope or intent of making a profit.  Thus,

considering this is Defendant's "favorite thing in the world," his activities as it pertains to his

real property interest may be considered no more than just that, a hobby.  (*See* Castaldi Decl.

Ex. 1 at 53:3-8.)  Thus, more is needed to establish a profit motive.  Defendant has not

provided more.[20]  The most the Court has to establish a profit-motive is the lone statement in

Defendant's declaration that "[a]ll of the properties were operated with the expectation of a

---

[20]   In fact, Defendant has not even submitted receipts for these purported expenses.

profit," (Helms Decl. ¶ 602.) and Defendant's testimony during his deposition, which is submitted by the United States, not Defendant.  At his deposition, Defendant stated that he "managed his own property, bought and sold some property, and managed property for other people." (Castaldi Decl. Ex. 1 at 47:25-48:2.)  Yet, even when Defendant discusses improving the property for sale or rent, he mostly discusses it in terms of recovery of his expenses and, perhaps, a profit.  (*See, e.g.*, *Id.* at 259-60, 262-63, 313-314.)  Considering the lack of other evidence regarding any profit sharing or other arrangements with the real property owners in addition to the conclusory, self-serving and vague statements by Defendant regarding an alleged profit-motive, the Court finds that Defendant has not met his burden of establishing a genuine issue of material fact as to whether he engaged in a profit-motivated business.  As such, Defendant may not deduct any claimed profit or "ordinary and necessary" expenses incurred in relation to that purported business and therefore the IRS properly disallowed all claimed income and expenses.  Thus, the Court **GRANTS** summary judgment in favor of the United States as to this issue.[21]

### 2.        Ownership Interest and Powers of Attorney

The United States argues that Defendant improperly claims rental income for properties which he has no demonstrated ownership interest in nor any purported right to receive rents or other income.  The rent, the United States contends, is properly attributable to the property owners' income and the owner, not Defendant, should be taxed on them.  Likewise, the United States contends that Defendant has claimed deductions that are reserved for the owners of the property who have an economic interest in that property.  *See Baird v. Commissioner*, 68 T.C. 115, 123 (1977).  "For instance, the Defendant deducted property taxes and depreciation for properties that he does not own." (MSJ at 18.)  Accordingly, the United States contends that Defendant improperly deducted depreciation for the Tower Drive property (*see* Bonilla Decl. Ex. 4 at US0123; Ex. 5 at US0159) and property taxes for the

---

[21] In the alternative, the United States argues that Defendant cannot deduct business expenses for his purported real estate business without recognizing income and that, given his delinquent tax returns, the IRS is unable to determine whether he has done so.  Because the Court finds no profit-motive, the Court declines to address this argument.

Avenida Navidad, Berlin Street, Tower Drive and Montongo Street properties.  *See* 26

C.F.R. § 1.164-1(a); *see also Magruder v. Supplee*, 316 U.S. 394, 396 (1942).  (*See id.* Ex. 2

at US0073; Ex. 3 at US0094, US0095; Ex. 4 at US0122, US0123; Ex. 5 at US0157, US0158,

US0159.)  Further, the United States argues that Defendant may not deduct mortgage interest

because he is not an owner of the Tower Drive property.  *See Baird*, 68 T.C. at 123; *Dean v.*

*Commissioner*, 35 T.C. 1083, 1084-85 (1961).  (*See id.* Ex. 4 at US0123; Ex. 5 at US0159.)

Of course, these arguments rely on whether the Court finds that Defendant did not

have any ownership or other interest in these properties so as to permit him to include rents

as income and deduct expenses such as property tax, depreciation, and mortgage interest

which are more than "ordinary and necessary" business expenses.  As stated above,

Defendant claims that for three of these properties, the Berlin Street, Avenida Navidad, and

Montongo properties, he received a power of attorney which gives him such an interest.  The

United States contends that these powers of attorney give no such authority, and for the other

properties, there is *no* demonstration of any ownership interest.

The Court agrees.  As discussed above, Defendant has not met his burden of

establishing that he had an ownership interest sufficient to permit him to include income and

take deductions such as depreciation, mortgage interest, and property tax.  Even for those

properties with a power of attorney, these documents do not give an ownership or other

interest sufficient to entitle him to deduct expenses, count as income, deduct mortgage

interest, or deduct property taxes and depreciation.  As such, the Court **GRANTS** summary

judgment in favor of the United States as to this issue.

### 3.    Lake Athabaska Property

The Lake Athabaska property, for which Defendant claimed income and deductions,

is unique because Defendant received a Grant Deed allegedly transferring the property to

him on April 25, 1992.  (*See* Helms Decl. ¶ 587, Ex. X at 2890.)  However, this deed was

never recorded.  (*See* MSJ at 19; Opp. to MSJ at 6.)  Defendant maintains that recording the

deed was unnecessary for Defendant to have legal title.  (*See* Opp. to MSJ at 6.)  However,

the United States submits another Grant Deed from the Lake Athabaska property owners to a

1   third party, Kenneth and Rebecca Oates, which was recorded on October 30, 2002.  (*See*

2   Castaldi Decl., Ex. 36.)  Defendant testified that the property was placed in the Oates' name

3   in order to avoid the IRS placing a tax lien on the property.  (*See id.*, Ex. 1 at 284:3-285:6.)

4   The United States disallowed all claimed mortgage interest, property tax, and depreciation

5   for this property, as well as all expenses claimed associated with this property.[22]  (*See* Bonilla

6   Decl. ¶ 215, 298, 299, 304, 328; *see also id.* Exs. 4 at US0123 (1992 return); Ex. 5 at

7   US0161 (1993 return).)

8       The United States argues that, regardless of recording issues, Defendant

9   "conveniently ignores the fact that he admitted placing the property in the name of a third

10  party nominee to avoid IRS tax liens."  (Reply at 9.)  The United States therefore argues that,

11  "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done

12  so, he must accept the tax consequences of his choice. . ."  *Commissioner v. National Alfalfa*

13  *Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974).  The Court agrees.  Defendant chose

14  to put the deed of the property in a third party's name in order to avoid a tax lien.  In doing

15  so, he must suffer the tax consequences associated with this transaction; i.e. his inability to

16  include as income and make deductions reserved for the owners of said property.  As such,

17  the IRS properly disallowed all income and deductions claimed by Defendant associated with

18  the Laka Athabaska property and **GRANTS** summary judgment accordingly.

19      **C.    Schedule D Bad Debt Deductions**

20      Revenue Agent Bonilla further disallowed all deductions attributed by Defendant as

21  bad debt loss pursuant to 26 U.S.C. § 166(a).  The United States contends that Defendant has

22  not met its burden of demonstrating that the debt is uncollectible.  *See In re Forte*, 234 B.R.

23  607, 625 (Bankr. E.D.N.Y. 1999).  Moreover, "nonbusiness debt" or personal loans are not

24  deductible.  *See* 26 U.S.C. 166(d).  These disallowed debts include a $1,000 bad debt loss

25  attributable to a man named Schumpert; personal items loaned to Einspar, and veterinary

26

27      [22]  The United States also disallowed all claimed Schedule B interest income for impound
    accounts associated with the Lake Athabaska property.  However, finding that Defendant did not
28  substantiate ownership interest in this property, the Court disallowed all interest income.  This is
    similar to why the IRS disallowed all claimed rental income for property it found Defendant did not
    have an ownership interest in.  The Court finds this disallowance entirely proper as a matter of law.

08cv151

1  bills of his neighbor's cat, Fur Ball.  (*See* MSJ at 20-21.)  Defendant does not dispute these

2  disallowances, claiming at oral argument that they are *de minimus*.  As such, the Court

3  **GRANTS** summary judgment of this issue.

4  **V.      Penalties/Additions to Tax**

5          In addition to the above, the IRS also imposed several penalties and additions to tax.

6  First, the United States imposed penalties for failing to filing a timely return due to

7  reasonable cause and not willful neglect.  *See* 26 U.S.C. 6651(a)(1); *see also* 26 C.F.R. §

8  301.6651-1(c)(1) (requiring taxpayer to make affirmative showing of reasonable cause by

9  filing declaration); *United States v. Boyle*, 469 U.S. 241, 246 (1985).  This provision imposes

10  a penalty of 5% of the tax due, per month, until the return is filed but not to exceed 25%.  *See*

11  26 C.F.R. § 301.6651-1(a)(1).  Defendant did not file the tax returns at issue until January

12  2008.  (*See* Castaldi Decl. ¶ 7, Ex. 6.)  Second, the IRS imposed an addition of tax for failure

13  to timely pay one's taxes under 26 U.S.C. 6651(a)(2) because Defendant did not show that

14  the failure to pay was due to reasonable cause and not willful neglect.  To date, Defendant

15  has not paid the full amount of taxes purportedly owed.  (*See* Fuchs Decl. ¶ 19.)  Third, the

16  IRS imposed an addition to tax for failure to timely pay one's estimated taxes.  *See* 26 U.S.C.

17  § 6654.  The United States contends that Defendant has not shown that a waiver applies to

18  this penalty or that he had suffered any "casualty, disaster or other unusual circumstances"

19  that would make such a penalty "against equity or good conscience."  *See id.* §

20  6654(e)(3)(A), (B).

21          In opposition, Defendant concedes the penalties imposed for failure to timely file and

22  pay taxes for the years at issue.  (*See* Helms Decl. ¶ 1.)  However, he claims that when he

23  filed the returns at issue, those were his original returns and the he paid his estimated taxes at

24  that time.  (*Id.*; *see also* Def. Opp. to Pl. SOF ¶ 15.)  In response, the United States argues

25  that the IRS' preparation of Defendant's returns using third party sources when he failed to

26  file his returns is treated as a return under 26 U.S.C. § 6651(g)(2) for purposes of calculating

27  additions to tax under Section 6651(a).  The Court agrees.  Additionally, while Defendant

28  paid some estimated taxes, he does not explain why penalties should not be imposed on the

estimated taxes he did not pay.  In other words, Defendant has not shown "unusual

circumstances" and that an addition would be "against equity and good conscience"

sufficient to warrant penalty waiver.  *See* 26 U.S.C. § 6654(e)(3)(B).  At oral argument,

Defendant conceded this point but asserted that the United States has the ability to abate such

tax penalties.  This Court will not do so and thus **GRANTS** summary judgment as to all

penalties and additions to tax imposed.[23]

### CONCLUSION

For the above reasons, the Court **HEREBY GRANTS IN PART** and **DENIES IN**

**PART** the United States' motion summary judgment to reduce tax assessment to judgment

against Defendant.  The Court **GRANTS** summary judgment in favor of the United States as

to the IRS's assessment for the tax years 1989, 1990, 1991, 1992, and 1993 except for the

following issues for which Defendant has established a genuine issue of material fact and

therefore the Court **DENIES**: (1) alleged double deposits specifically identified by this Court

in the year 1989; (2) office rental expenses for all years at issue; (3) meal and entertainment

expenses identified by this Court for the years 1989, 1990, and 1991; (4) disallowance of

miscellaneous expenses claimed for the years 1990 and 1991, save all claimed gift expenses.

If the parties proceed to trial, only these limited issues which survive summary judgment as

set forth in this Order will be determined.  Only then will the Court require the parties to re-

compute the claimed deductions for each tax year and all penalties and additions to tax for a

complete judgment as to taxes and penalties owed for these years at issue.

**IT IS SO ORDERED.**


DATED:  August 26, 2010

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

---

[23]  Of course, the actual dollar amount imposed depends in part on the issues for which
summary judgment is denied and the outcome of any subsequent trial.